IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| TECH USA, INC.<br>8334 Veterans Highway<br>Millersville, MD 21108,<br>a Maryland Corporation | * |
| | * |
| | * Civil No. _____ |
| Plaintiff | |
| | * |
| v. | |
| | * |
| KEVIN S. CRABTREE<br>529 Cypress View Drive<br>Oldsmar, FL 34677 | * |
| | * |
| Defendant | |

\*       \*       \*       \*       \*       \*       \*

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, INC. ("TECH USA") by and through its attorneys Allan P. Hillman of Shipman and Goodwin, LLP and Grover C. Outland, III, General Counsel, TECH USA, INC., and sues Defendant Kevin S. Crabtree ("Crabtree"). TECH USA sues Crabtree for four breaches of contract (post-term covenant not to solicit TECH USA customers, post-term covenant not to compete, confidentiality obligations, and misappropriation of TECH USA property); for trade secret misappropriation in violation of the "Maryland Uniform Trade Secrets Act," Md. Comm. Law Code Ann. §11-1201, et seq.; for federal unfair competition in violation of the "Lanham Act," 15 U.S.C. § 1125(a)(1)(A) and (B); and for common law unfair competition.

## JURISDICTION AND VENUE

1.      TECH USA is a Maryland corporation with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.

2.     TECH USA is a small to mid-size competitor in the nationwide and worldwide market for providing customized staffing and consulting support to commercial and government clients.   It has expertise particularly in the areas of engineering, information technology, aerospace, scientific and professional services. Its competitors include companies with revenues of many hundreds of millions of dollars or more.   TECH USA develops close working relationships with its corporate and other customers in order to better understand and service their personnel and hiring needs, whether via contract assignments of TECH USA personnel to the customer's (or its end-client's) projects, by means of finding, screening and referring direct placements of new employees to join the customer's payroll, and/or by participating directly in the customer's project via subcontracting.

3.     Defendant Kevin Crabtree is an individual and citizen of Florida.  His last known domicile is 529 Cypress View Drive, Oldsmar, FL 34677.

4.     On or about June 7, 1999, at the inception of his employment with Plaintiff, Crabtree and TECH USA, as employer, entered into a Confidentiality/Non-Competition Agreement (Overhead Employees) ("Confidentiality/Non-Competition Agreement").   As set forth below, this Agreement protects TECH USA's trade secrets, and also required Crabtree to refrain from soliciting TECH USA's customers and/or competing with TECH USA for a limited period of time after leaving its employ.  A copy of the Confidentiality/Non-Competition Agreement between Crabtree and Plaintiff is attached to this Complaint as **Exhibit A.**

5.     Crabtree's position as an entry-level recruiter with Plaintiff, beginning in mid-1999, was Defendant's first job after college.  He worked in Plaintiff's Millersville, Maryland office from June 1999 until approximately early 2001, at which time he relocated to Tampa, Florida and worked at Plaintiff's office in Tampa, Florida until his abrupt resignation on January 12,

2

2007.  <u>See</u> **Exhibit B,** Affidavit of TECH USA President Thomas B. Howell ("Howell Affidavit"), ¶¶ 8, 12.

      6.      Plaintiff provided extensive specialized training to Crabtree regarding recruiting and sales in the staffing industry during the more than 7½ years of his employment with TECH USA. He received substantial confidential trade secret information from TECH USA, including without limitation customer names, hiring manager contact information, customer preferences on preferred staffing solutions, and customers' pricing margins, that TECH USA had developed over years with substantial effort and experience, that it has safeguarded, that was not public information, that was not readily available to its competitors, that would be very valuable to its competitors, and that would take them substantial time and expense to ascertain. <u>See</u> Exhibit B, Howell Affidavit, ¶¶ 4, 8.  Crabtree was promoted at least twice during his TECH USA employment and was a co-presenter or speaker on recruiting- and sales-related topics at TECH USA national sales conferences.  Id. at 13.

      7.      This Court has jurisdiction under all counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exclusive of interest and costs, exceeds the sum of $75,000. Jurisdiction and venue are proper in this judicial district because Crabtree expressly agreed in paragraph 7 of the Confidentiality/Non-Competition Agreement with Plaintiff that he

> hereby consent[s], in any action brought in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where TECH USA has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, and [he waives] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision."

8.     Paragraph 8 of the Confidentiality/Non-Competition Agreement generally requires "Disputes" between the parties to be resolved by arbitration pursuant to the then-prevailing Employment Dispute Resolution Rules of the American Arbitration ("AAA"), with all demands to be filed with the McLean, VA office of the AAA, and all arbitration proceedings to take place in the Baltimore, MD metropolitan area, with an exception for, among other things, actions for matters described in paragraph 5 of the Agreement (for example, claims for injunctive relief, as in the current case).

9.     Agreement ¶ 5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e., paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, Defendant agreed in ¶ 5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)." Agreement ¶ 5 further provides, that the injunction shall run for a period of twelve months from the date the injunction is granted, rather than twelve months from the date of Termination of Employment.

## THE CONTROVERSY

10.     On Friday, January 12, 2007, Crabtree abruptly resigned from TECH USA's employment without giving any notice or citing any reasons therefor (other than to say he needed

to cease working because of health challenges he had been experiencing). <u>See</u> Exhibit B, Howell Affidavit, ¶ 12 and Exhibit 4 thereto.

11.     On information and belief, immediately after his abrupt resignation, Crabtree left Plaintiff's premises in Tampa carrying certain Company Property, Confidential Information, and Trade Secrets of TECH USA, including, without limitation, Plaintiff's customers' business cards, yellow pads with TECH USA Confidential Information written or otherwise noted thereon, customer contact names and phone numbers, and other confidential and/or privileged information.

12.     Plaintiff's Legal Department wrote Crabtree to remind him of his obligations concerning return of the Company Property and Confidential Information from the TECH USA premises in Tampa after his resignation, and warned him in a detailed writing to comply with the relevant provisions and the other terms of the Confidentiality/Non-Competition Agreement. <u>See</u> **Exhibit C**, letter dated January 19, 2007 from Grover C. Outland III, TECH USA's General Counsel to Kevin Crabtree.  While Crabtree had returned some TECH USA customer business cards to Plaintiff's Tampa office via overnight mail during the week of January 15, he returned no Company Property in response to Mr. Outland's January 19 letter, nor did he respond in any other way to TECH USA.

13.     Cavoli Engineering of Sarasota, Florida is a customer of TECH USA, the account of which Crabtree serviced while an account executive for Plaintiff in 2006, prior to his resignation. <u>Id.</u>, ¶ 3.

14.     On or about March 22, 2007, a gentleman identifying himself as "Kevin" placed a telephone call to John P. Michaud, Jr. regarding a position available at Cavoli Engineering. <u>See</u> **Exhibit D**, Affidavit of John P. Michaud, Jr., ¶ 3 ("Michaud Affidavit").  "Kevin" stated to Mr.

Michaud that Cavoli Engineering was a client of his, that his last name was "Scott," and that he worked for "Thompson Staffing." Id.

15. "Kevin" stated to Mr. Michaud that he had found Mr. Michaud's resume that Mr. Michaud had posted on the Careerbuilder.com website. Michaud Affidavit, ¶ 4. "Kevin" represented to Mr. Michaud that Mr. Michaud was a "good fit" for Cavoli Engineering's position. Id. "Kevin" stated that he knew Cavoli Engineering and its personnel requirements well. Id. (He gained this non-public information as a result of his employment by TECH USA).

16. Whenever "Kevin" would call Mr. Michaud, the company name "Inergy" and the phone number (813) 855-8334 would appear on the caller identification display on Michaud's telephone. See Michaud Affidavit at ¶ 5.

17. Upon information and belief, the phone number (813) 855-8334 belongs to Inergy Professionals, Inc. ("Inergy"), a company formed by Jill Crabtree ("Jill Crabtree"), Kevin Crabtree's wife, or belongs to the Crabtrees personally. See Howell Affidavit at ¶ 11 and Exhibit 3 thereto. That telephone number rings at the Crabtrees' home in Oldsmar, Florida, only approximately 13 miles from TECH USA's Tampa office where Kevin Crabtree last worked as an employee of TECH USA. Id. at ¶ 10 and Exhibit 2 thereto.

18. In late March 2007, just over two months after abruptly resigning from TECH USA employment, Defendant Crabtree acted as an intermediary between TECH USA's customer Cavoli Engineering and Mr. Michaud, submitting Mr. Michaud's resume to Cavoli and negotiating a deal for Mr. Michaud to join Cavoli Engineering as its employee on a direct placement basis. Michaud Affidavit at ¶ 6. Attached as Exhibit A to the Michaud Affidavit is a copy of the email message that Mr. Michaud received from "Kevin" on Friday, March 23 (which email sets forth Crabtree's phone number [813-855-8334] below the name "Kevin") regarding

6

the confirmation of an interview that Crabtree had obtained for Mr. Michaud at Cavoli Engineering for Tuesday, March 27, at 4 p.m.

19.     Upon information and belief, Crabtree negotiated a written or verbal fee agreement with TECH USA's customer Cavoli Engineering under which he was to receive a fee for each direct placement he made to Cavoli Engineering.  The support that TECH USA had provided to Cavoli Engineering during 2006, when Defendant Crabtree handled the Cavoli Engineering account for TECH USA, consisted of direct placements.  See Howell Affidavit at ¶ 3.

20.     Based on Crabtree's representation to Mr. Michaud after the interview that Cavoli Engineering had agreed to hire Mr. Michaud, Michaud gave two weeks notice to his existing employer and prepared to join Cavoli Engineering.  Id. at ¶ 7.

21.     After Mr. Michaud gave two weeks notice, Defendant Crabtree called him and stated that Cavoli Engineering may be laying off personnel because of a few contracts it had lost.  Id. at ¶ 8.  Mr. Michaud tried but could not take back the two-week notice that he had given to his previous employer.  Id. at ¶ 9.

22.     After Mr. Michaud learned from Crabtree about layoffs at Cavoli, Mr. Michaud spoke directly with Cavoli Engineering.  The firm told Mr. Michaud to call Greg Pearce at TECH USA and not to call "Kevin" for any further assistance.  Id. at ¶ 10.

23.     Defendant Crabtree told Mr. Michaud more than once not to tell TECH USA about Crabtree's role in the direct placement of Mr. Michaud with TECH USA's customer Cavoli Engineering.  Id. at ¶ 11.  Plaintiff learned of Crabtree's role in detail from Mr. Michaud only in late April or early May 2007, and this suit followed promptly

24.     Under   paragraph   1   (Confidential   Information/Trade   Secrets)   of   the Confidentiality/Non-Competition Agreement between Crabtree and Plaintiff, Crabtree agreed

7

that "during [his] employment by [TECH USA] and, after [his] termination, whether by [Kevin Crabtree or TECH USA] with or without cause (collectively "Termination of Employment"), [Kevin Crabtree] agree[s] that [he] shall not use for [his] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act)."   Under such paragraph 1, "Confidential Information" means inter alia, information

> not generally known by [TECH USA's] competitors or the general public concerning [TECH USA], including, but not limited to: (a) its financial affairs, sales, and marketing strategies, acquisition plans, pricing and costs; (b) any of the following information about corporations or other entities (collectively Customers) for whom [TECH USA] employs, recruits, supplies or otherwise finds or arranges employees: any such Customer's or Customer's names, addresses, telephone numbers, contact persons, staffing requirements, and/or margin tolerances regarding pricing; . . . .

25.     Under Confidentiality/Non-Competition Agreement ¶ 2 (Company Property), "upon Termination of Employment, [Kevin Crabtree] agree[s] to immediately return to [TECH USA] any and all property, records and documents [Kevin Crabtree] obtained or developed in the course of such employment, including, without limitation, any lists or other documents, whether written or electronic, containing in whole or in part any of the Confidential Information or Trade Secrets."

26.     Paragraph 3(b) of the Confidentiality/Non-Competition Agreement that Kevin Crabtree signed provides (in pertinent part) that

> . . . for twelve (12) months after Termination of Employment, [Crabtree] will not in any manner induce, attempt to induce or assist others to induce or attempt to induce . . . (b) any existing Customer of [TECH USA] or any prospective Customer with whom [TECH USA] has had contact, to terminate its business relationship with [TECH USA], or do anything, directly or indirectly to interfere with the business relationship, existing or prospective, between [TECH USA] and (i) any of its Customers. . .

8

27.    Subparagraphs (a) and (b) of Confidentiality/Non-Competition Agreement ¶ 4 (Non-

competition) provide (in pertinent part) that

> . . . for twelve (12) months after Termination of Employment, [Crabtree]
> agree[s] that [he] will not, either directly or indirectly, in any manner or
> capacity, as principal, agent, partner, officer, director, employee, member of
> any association or limited liability company, consultant, advisor or in any
> capacity other than in [his] capacity as an employee of [TECH USA]:
>> (a) . . . (after Termination of Employment) engage in or work for any
>> business or activity which engages in the business of recruiting or
>> providing employees, on a temporary or permanent basis, and which
>> has an office located within fifty (50) miles of any of [TECH USA's]
>> offices;
>> (b) . . . (after Termination of Employment) approach, contact, solicit,
>> divert, accept, or contract with any employees or personnel to provide
>> services on a temporary or permanent basis to any individual,
>> corporation, or other entity which at any time within two (2) years
>> prior to the date of Termination of Employment, has been, is, or was a
>> Customer of [TECH USA] . . .

As stated hereinabove, if the employee violates this obligation, the one year non-competition

restriction commences upon the date an injunction halting any violation is granted. (Id at ¶ 5).

This provision is designed to address precisely the situation which exists here:  TECH USA

bargained for a full year of protection.  It recently confirmed it was not receiving that, and unless

the one year restriction runs from the date of a Court order, it will lose half of its bargained-for

relief.

## COUNT I

### Breach of Contract (Post-Term Covenant Not to Solicit Customers)

28.    Plaintiff TECH USA hereby incorporates paragraphs 1-27 as if each were fully set

forth herein.

29.    As documented by the Michaud Affidavit, Defendant Crabtree solicited TECH USA

customer Cavoli Engineering to hire Mr. Michaud as its employee, thereby violating the

9

provisions of Confidentiality/Non-Competition Agreement ¶ 3(b) in "inducing" or "attempting to induce any existing customer" of TECH USA to either "terminate its business relationship" with TECH USA, or "do anything, directly or indirectly, to interfere with the business relationship, existing or prospective," between TECH USA and Cavoli Engineering.

30.    Likewise, Defendant Crabtree solicited Cavoli Engineering to hire Mr. Michaud as its employee in violation of Confidentiality/Non-Competition Agreement ¶ 4(b). The harm to Plaintiff resulting from that solicitation is irreparable, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff.  The harm cannot be compensated in money damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)    Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 3(b), 4(b), and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Crabtree his agents, servants and employees, and all those acting in concert with him, from violating the non-solicitation restrictions of such Agreement.

(b)    Entry of an Order requiring an accounting by Defendant Crabtree to TECH USA of Defendant's sales and revenues from his non-solicitation violations, as to which sales and revenue TECH USA may be entitled as a result of Defendant's aforesaid acts.

(c)    Entry of a judgment against Defendant Crabtree for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

## COUNT II

### Breach of Contract (Post-Term Covenant Not to Compete)

31.    Plaintiff TECH USA hereby incorporates paragraphs 1-30 as if each were fully set forth herein.

32.    As the Michaud Affidavit indicates, by means of Defendant Crabtree's staffing business activities in contacting the candidate Mr. Michaud, arranging an interview and direct placement of Mr. Michaud with Plaintiff's customer Cavoli Engineering and otherwise acting as a salesman and intermediary between the candidate Mr. Michaud and Cavoli Engineering, Defendant Crabtree has violated the post-term non-competition covenant in Confidentiality/Non-Competition Agreement in paragraph 4(a), in that he engaged in "the business of recruiting or providing employees, on a temporary or permanent basis" within 50 miles of the Tampa office of Plaintiff where he used to work and within 12 months of his Termination of Employment. Crabtree's place of business is the site from which he placed phone calls to Mr. Michaud (see Michaud Affidavit, ¶ 5; see Howell Affidavit, ¶ 9 and Exhibit 1 thereto). Defendant Crabtree's home in Oldsmar, Florida, approximately 13 miles from TECH USA's office in Tampa is, on information and belief, the site where Defendant Crabtree worked in the staffing industry in violation of Confidentiality/Non-Competition Agreement 4(a).

33.    Defendant Crabtree's acts in violating the post-term covenant not to compete of the Confidentiality/Non-Competition Agreement that he signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against Defendant Crabtree as follows:

(a)    Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 4(a) and 5 of the Confidentiality/Non-Competition

11

Agreement, enjoining Defendant Crabtree his agents, servants and employees, and all those acting in concert with him, from violating the non-competition provisions of such Agreement.

(b)    Entry of an Order requiring an accounting by Defendant Crabtree to TECH USA of Defendant's sales and revenues from his contractual violations, as to which sales and revenues TECH USA may be entitled as a result of Defendant's aforesaid acts.

(c)    Entry of a judgment against Defendant Crabtree for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

**COUNT III**

**Breach of Contract (Confidential Information)**

34.    Plaintiff TECH USA hereby incorporates paragraphs 1-33 of the Complaint as if each were fully set forth herein.

35.    As demonstrated by Exhibit D (the Michaud Affidavit), Defendant Crabtree, in violation of his obligations under paragraph 1 of the Confidentiality/Non-Competition Agreement that he signed with Plaintiff, used "Confidential Information" of TECH USA "for his own benefit," namely, the name of Plaintiff's customer (Cavoli Engineering), its address, and/or telephone number, and/or hiring managers' and/or contact persons' email addresses and direct dial telephone numbers and/or Cavoli Engineering's staffing requirements and/or pricing preferences, all of which Defendant learned and/or had access to exclusively through his sales employment with TECH USA. See also Howell Affidavit at ¶ ¶ 3, 5. Such information all falls within the definition of "Confidential Information" in the Agreement and the Michaud Affidavit demonstrates that Defendant Crabtree used such Confidential Information of TECH USA in late

12

March 2007 for his own personal benefit in arranging the direct placement of Mr. Michaud with Cavoli Engineering, a customer of Plaintiff.

36.     Defendant Crabtree's acts in violation of the Confidential Information provisions of the Confidentiality/Non-Competition Agreement that he signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Kevin Crabtree his agents, servants and employees, and all those acting in concert with him, from violating the Confidential Information provisions of such Agreement.

(b)     Entry of an Order requiring an accounting by Defendant Kevin Crabtree to TECH USA of Defendant's sales and revenues resulting from his unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of his aforesaid acts.

(c)     Entry of a judgment against Defendant Kevin Crabtree for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to ¶ 9, the attorney fee provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

**COUNT IV**

**Breach of Contract (Misappropriation of Company Property)**

37.     Plaintiff TECH USA hereby incorporates paragraphs 1-36 as if each were fully set forth herein.

13

38.     As detailed in paragraphs 11 and 12 of this Verified Complaint, Defendant Crabtree had removed from Plaintiff's premises in Tampa, at some point before or shortly after his abrupt resignation on January 12, 2007, certain Company Property of TECH USA, including, without limitation, Plaintiff's customers' business cards, multiple yellow pads with TECH USA Confidential Information written or otherwise noted thereon, customer contact names and phone numbers, and other information and/or privileged information. Despite Plaintiff's telephonic and written demands, Defendant Crabtree returned only certain business cards of Plaintiff's customers a few days following his abrupt resignation. Among other things, he has ignored TECH USA's General Counsel's demand in a January 19, 2007 letter (attached to the Verified Complaint as Exhibit C) to return to Plaintiff the remaining Company Property in his possession or control. Defendant's continued retention of Company Property of TECH USA is a violation of his Confidentiality/Non-Competition Agreement, paragraph 2.

39.     Defendant Crabtree's actions in violation of the Company Property provisions in paragraph 2 of the Confidentiality/Non-Competition Agreement have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against Defendant Crabtree as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 2 and 5 of the Confidentiality/Non-Competition Agreement, enjoining Defendant Crabtree, his agents, servants and employees, and all those acting in concert with him, from violating the provisions of paragraph 2 of the Confidentiality/Non-Competition Agreement, and ordering the return of all Company Property in

14

or under his (or their) possession or control to TECH USA within five (5) days of this Court's Injunction order.

        (b)      Entry of an Order requiring an accounting by Defendant Crabtree to TECH USA of Defendant's sales and revenues as a result of or in connection with Defendant's aforesaid acts in violation of paragraph 2 of the Confidentiality/Non-Competition Agreement.

        (c)      Entry of a judgment against Defendant Crabtree for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

**COUNT V**

**Statutory Trade Secret Misappropriation**

40.    Plaintiff TECH USA hereby incorporates paragraphs 1-39 as if each were fully set forth herein.

41.    As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, Defendant Crabtree received from Plaintiff in the course of his employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

42.    Among the Trade Secrets entrusted to Crabtree during his employment with TECH USA was TECH USA's customer list, including, without limitation, the identity of Cavoli Engineering as a TECH USA customer, as well as points of contact such as hiring managers at Cavoli Engineering (including without limitation such managers' email addresses and direct dial telephone numbers) and Cavoli Engineering's pricing/margins for direct placements. The Trade Secrets described throughout this Count constitute information that TECH USA has developed

15

over many years with substantial effort and experience and that TECH USA has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors. Howell Affidavit at ¶ 5. In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain. Id. Only those TECH USA employees involved in sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of TECH USA who access Trade Secrets in order to service TECH USA customers and accounts sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects TECH USA's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting TECH USA customer names or other customer information on the TECH USA website. Id. Instead, the TECH USA Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in 2006 is via unique user name and password only, which are inactivated when an employee leaves the company. Id.

43.     Crabtree expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that Defendant signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event.

44.     Crabtree has misappropriated TECH USA's Trade Secrets after Termination of Employment, as evidenced by the Michaud Affidavit ¶¶ 3-9. Defendant's acts in utilizing TECH

16

USA's Trade Secrets to contact Cavoli Engineering and do business with such customer of Plaintiff have been willful and malicious, and Crabtree sought actively to conceal them. Among other things, Crabtree told Mr. Michaud, the candidate he was presenting to one of Plaintiff's customers while utilizing Plaintiff's Trade Secrets, not to tell Plaintiff of Defendant's role in the transaction. Michaud Affidavit, ¶ 11.

45.     Plaintiff has suffered damage and will continue to suffer damage as a result of Crabtree's misappropriation of TECH USA's Trade Secrets after Termination of Employment. The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant Kevin Crabtree and his agents, servants and/or employees, and all those acting in concert with him, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade Secrets for his own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)     Entry of a judgment against Defendant Crabtree pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because Defendant has engaged in a willful and malicious misappropriation.

(c)     Entry of a judgment against Defendant Crabtree for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

(d)     Entry of a judgment against Defendant Crabtree pursuant to § 1204 of the Act for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding), since Defendant has engaged in a willful and malicious misappropriation.

**COUNT VI**

**Federal Unfair Competition**

46.     Plaintiff TECH USA hereby incorporates paragraphs 1-45 as if each were fully set forth herein.

47.     As demonstrated by Exhibit D, Michaud Affidavit, Defendant Crabtree, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and promoted and advertised himself to Mr. Michaud as a member of "Thompson Staffing" and also stated that his name was "Kevin Scott," rather than "Kevin Crabtree." Michaud Affidavit, ¶ 3. He further misrepresented the origin of the services he was providing by stating he was "Kevin Scott" from "Thompson Staffing", in violation of 15 U.S.C. § 1125(a)(1)(A).

48.     Defendant Crabtree further represented to Mr. Michaud that he knew Cavoli Engineering and its personnel requirements well and that, based on his relationship with Cavoli Engineering, Mr. Michaud was a "good fit" for Cavoli Engineering's position. Michaud Affidavit, ¶ 4. Such representations by Defendant Crabtree to Mr. Michaud turned out to be untrue and deceptive, as Mr. Michaud learned when Cavoli's lay-offs were announced shortly after giving notice to his previous employer.

WHEREFORE, Plaintiff prays judgment against Defendant Crabtree as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and 15 U.S.C. § 1116, and paragraph 5 of the Confidentiality/Non-

Competition Agreement, enjoining Defendant Crabtree his agents, servants and employees, and all those acting in concert with him, from violating the Lanham Act.

(b)     Entry of an Order requiring an accounting by Defendant Crabtree to TECH USA of Defendant's sales and revenues as a result of or in connection with Defendant's aforesaid acts in violation of the Lanham Act, pursuant to 15 U.S.C. § 1125.

(c)     Entry of a judgment against Defendant Crabtree for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

(d)     Entry of a judgment awarding exemplary damages and attorneys fees in this exceptional matter pursuant to 15 U.S.C. § 1117.

**COUNT VII**

**<u>Common Law Unfair Competition</u>**

49.     Plaintiff TECH USA hereby incorporates paragraphs 1-48 as if each were fully set forth herein.

50.     Defendant Crabtree has committed the tort of unfair competition against Plaintiff.  He has acted unfairly and deceptively, and has acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public such as the affiant John Michaud (<u>see</u> Exhibit D).

51.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant's unfair competition.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendant Crabtree as follows:

19

(a)     Entry of a Preliminary and Permanent Injunction against Crabtree and his agents, servants and/or employees, and those acting in concert with him, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by Defendant Crabtree to TECH USA of all his sales and revenues, as a result of his aforesaid acts in violation of the common law of unfair competition, and punitive damages in the amount of $500,000.

(c)     Entry of a judgment against Defendant Crabtree for  TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant).

Dated:  June 1, 2007

_____
Allan P. Hillman
U.S. District Court Bar No. 119
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT  06103-1919
(860) 251-5000
ahillman@goodwin.com


_____
Grover C. Outland III
U.S. District Court Bar No. 24064
**TECH USA, Inc.**
8334 Veterans Highway
Millersville, MD 21108
(410) 987-1011
outland@techusa.net

## VERIFICATION OF COMPLAINT UNDER PENALTY OF PERJURY

**STATE OF MARYLAND**

                     **SS:**

**COUNTY OF ANNE ARUNDEL**

       Thomas B. Howell, being first fully sworn, deposes and states under penalty of perjury that he is over twenty-one years of age; that he is the Chief Executive Officer of TECH USA, INC. ("TUSA"); that, as such, he is authorized to make this oath and verification; that, in his capacity, he is familiar with TUSA's business operations, including its business dealings and its relationship with its employees generally and with Defendant Kevin Crabtree in particular; that he has read the foregoing Verified Complaint; that he knows the contents thereof to be true of his own personal knowledge, except that those sworn by John P. Michaud, Jr. are upon Mr. Michaud's personal knowledge; and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, Mr. Howell believes them to be true.

Dated:  May **31**, 2007

                                  _____

                                  Thomas B. Howell
                                  Chief Executive Officer
                                  TECH USA, INC.
                                  8334 Veterans Highway
                                  Millersville, MD 21108

473105 v.01

21